CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 19 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SUBRENNA ROSS, | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 7:14-CV-00512 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| COUNTY OF FRANKLIN, | ) |
| VIRGINIA, et al., | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
|     Defendants. | ) |

Plaintiff Subrenna Ross filed this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., against defendants County of Franklin, Virginia (the "County"), Franklin County Department of Social Services (the "Department"), and Franklin County Board of Public Welfare (the "Board"). The case is presently before the court on a motion to dismiss filed by the County. For the following reasons, the court will grant the motion.

## Factual Background

The following facts, taken from Ross' complaint, are accepted as true for purposes of the County's motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Ross is 50 years old. In July 1994, Ross began working for the Department as a "Fraud/Eligibility Worker." Am. Compl. ¶ 8. She was eventually promoted to the position of "Interim Self-Sufficiency Supervisor," a position she held until December 3, 2013. Id. At the time she held this position, she was the only African-American supervisor out of eight supervisors, and the only African-American supervisor in the history of the Department.

On October 5, 2013, Ross married her husband, who is white. When Ross returned from

her honeymoon in November 2013, Deborah Powell, the director of the Department, told Ross that she was going to be demoted and requested that she accept this demotion. Ross did not accept the demotion. In response, Powell told Ross that she would either be demoted or that she must resign. Ross told Powell that she would not resign. Powell then suspended Ross for a period of time. On December 3, 2013, Ross was demoted after receiving a Group II disciplinary notice. The position was then filled by a white female with less experience than Ross. Ross claims that she was a dedicated employee for over 20 years, was qualified for the position, and performed her job satisfactorily. In addition, since Powell began working at the Department in 2011, Ross alleges that either Powell has fired older workers or those workers have quit. Ross asserts that the Department now consists of younger workers with little experience.

Ross is currently a self-sufficiency worker at the Department. She states that funding is not secure for this position, thereby putting her continued employment at risk, and that she receives lower pay in this role.

In her initial complaint, Ross alleged that the County discriminated against her on the basis of race and age, in violation of Title VII, the ADEA, and 42 U.S.C. § 1981. Ross timely filed a charge of discrimination with the Virginia Human Rights Council and the Equal Employment Opportunity Commission ("EEOC"). On June 26, 2014, Ross received a right-to-sue letter from the EEOC. She seeks declaratory and injunctive relief, reinstatement to her supervisor position, damages for loss of income and employment, damages for pain and suffering, punitive and liquidated damages, and attorney's fees and costs.

## Procedural History

Ross filed her initial complaint against the County on September 19, 2014. The County failed to timely answer or otherwise defend. As a result, the clerk entered default against the

County on December 19, 2014. On December 22, 2014, Ross moved for default judgment. However, before the court could rule on that motion, the County moved to set aside the clerk's entry of default on January 20, 2015, arguing that it had a meritorious defense to Ross' claims. The court granted the County's motion on June 12, 2015 and denied the motion for default judgment. On June 25, 2015, the County moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On July 13, 2015, Ross filed a motion to amend her complaint, along with a proposed amended complaint. The amended complaint added both the Department and the Board as defendants. On September 14, 2015, the court held a hearing on both motions. After the hearing, the court entered an order granting Ross' motion to amend and taking the County's motion under advisement. On September 17, 2015, Ross filed her amended complaint. The motion to dismiss has now been fully briefed and is ripe for disposition.

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, all well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must contain sufficient facts "to raise a right to relief above the

3

speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. Although a complaint need not contain detailed factual allegations, it must contain more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

## Discussion

The County argues that Ross' complaint against it should be dismissed for two reasons: (1) the County is not Ross' or Powell's "employer" under Title VII and the ADEA, and (2) section 1981 does not create a right of action against a local government. The court will consider each argument in turn.

### I. Claims under Title VII and the ADEA

The County first argues that both the Title VII and ADEA claims against it must be dismissed because it is not the employer of either Ross or Powell. Both Title VII and the ADEA limit the scope of their liability provisions to actions taken by an "employer." 42 U.S.C. § 2000e–2(a); 29 U.S.C. § 623(a). In order to state a plausible claim for relief under Title VII and the ADEA, the plaintiff must establish that the defendant is his or her "employer" within the meaning of the statute. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998) ("Congress only intended employers to be liable for Title VII violations."); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir.1994) (holding that "the ADEA limits civil liability to the employer"). The defendant is the plaintiff's "employer" if it: (1) falls within the statutory definition of "employer," and (2) "exercised substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment." Magnuson v. Peak

4

Technical Servs., Inc., 808 F. Supp. 500, 507 (E.D. Va. 1992).[1]

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees[.]" 42 U.S.C. § 2000e(b).[2] The definition of "person" includes, inter alia, "governments, governmental agencies, [and] political subdivisions." Id. § 2000e(a). Ross alleges that the County employs 300 or more employees, thereby satisfying both statutory definitions. Am. Compl. ¶ 7. However, Ross must still allege facts that show that the County exercised the requisite control over significant aspects of her employment in order to be considered her employer. See Magnuson, 808 F. Supp. at 507.

Ross claims that the County is her employer because she is an employee of the Department, and the County refers to the Department as one of its agencies on its website. In addition, Ross alleges that the County issues her W-2 form. The County, however, argues that it has no authority over significant aspects of Ross' employment due to the structure of Virginia's social services programs. The court agrees that Ross has not alleged sufficient facts to show that the County exercised the requisite control over her employment or over Powell's administration of the Department.

Under Virginia law, the supervision of local social services departments is entrusted to the Commissioner of Social Services (the "Commissioner") and the State Board of Social Services (the "State Board"). Wolf v. Fauquier Cty. Bd. of Supervisors, 555 F.3d 311, 321 (4th Cir. 2009); Bockes v. Fields, 999 F.2d 788, 789 (4th Cir. 1993). The Governor appoints both the Commissioner and the eleven members of the State Board. Va. Code Ann. §§ 63.2-200, 63.2-

---

[1] The court notes that the plaintiff in Magnuson only brought her claim under Title VII. However, Title VII and the ADEA "have nearly identical definitions of employers and employees[,]" and, therefore, the court will apply the same standard to Ross' ADEA claim. Signore v. Bank of Am., N.A., No. 2:12CV539, 2013 WL 5561612, at *5 (E.D. Va. 2013).

[2] The ADEA has similar language, but the person must have twenty or more employees. See 29 U.S.C. § 630(b).

5

215. The Commissioner manages the Department of Social Services for the entire Commonwealth. Id. § 63.2-203. The counties in Virginia have local departments of social services as well, which help to "implement the programs enacted by the Commonwealth." Bockes, 999 F.2d at 789. The local departments overseen by local boards of social services (the "local boards"), whose members are appointed by the county from a list of candidates provided by the Commissioner. Wolf, 555 F.3d at 321-22. The local board also selects a local director, who administers day-to-day social services. Bockes, 999 F.2d at 789. Beyond this appointment power, "municipalities have no control over the operations of local social services boards or departments." Wolf, 555 F.3d at 322. These local boards report to the Commissioner and State Board, not to the county. Id. at 322. The Commissioner and State Board retain ultimate authority over personnel decisions at both the state and local levels. Bockes, 999 F.2d at 789. The State Board establishes "minimum education, professional and training requirements and performance standards for the personnel employed by the Commissioner and local boards." Va. Code Ann. § 63.2-219. The Commissioner is required to "remove each employee who does not meet such standards." Id. § 63.2-208. The Commissioner also supervises the training of all personnel on the local boards and in the local social services departments. Id. § 63.2-204. While employees "serve at the pleasure of the local board" and local director, the local board must adhere to guidelines promulgated by the State Board when it hires and fires personnel. Id. § 63.2-326.

In this case, the complaint provides that Ross is an employee of the Department and Powell is the local director for the Department. Pursuant to Virginia law, it is presumed that Powell was appointed by the Board, which serves as the local social services board for Franklin County. The policies followed by the Department are found in the Virginia Code, the Virginia Department of Social Services Manual, and the Virginia Administrative Code—all of which are

6

drafted by the Commonwealth, not the County. Wolf, 555 F.3d at 322. Although the Board—whose members are appointed by the County—is tasked with selecting directors, like Powell, the Board ultimately reports to the Commissioner and State Board, not to the County. Moreover, the County does not hire, train, or supervise local directors or employees, as it has no powers other than selecting the members of the Board. Id. Even though Powell does have the power to hire employees, like Ross, pursuant to Va. Code Ann. § 63.2-325, Virginia law provides that local directors are actually agents of the Commissioner. Id. § 63.2-333. Ross' specific allegations against the County, that she suffered race and age discrimination because of her demotion, relate to personnel decisions over which only the State Board and the Commissioner have authority. Moreover, the facts alleged in the complaint, that the County referred to the Department as one of its agencies on its website and issued Ross' W-2, are insufficient to state a plausible claim that the County is Ross' and Powell's employer without any additional evidence that the County controlled the significant aspects of their employments. Therefore, the court finds that the County is not the employer of either Ross or Powell for the purposes of Title VII and the ADEA.

In the alternative, Ross argues that the County can be considered a joint employer with the Commonwealth in this case. The Fourth Circuit recently adopted the joint employer liability doctrine for Title VII claims in Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404 (4th Cir. 2015). Joint employer liability provides that two parties may be considered employers if they "share or co-determine those matters governing the essential terms and conditions of employment." Bristol v. Bd. of Cty. Comm'rs, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc) (quoting Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1360 (11th Cir. 1994)). In other words, the court looks at "whether both entities 'exercise significant control over the same employees.'" Id. (quoting Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997)). In

7

Title VII cases, the Fourth Circuit applies the "hybrid test," which sets forth nine factors for courts to consider when determining whether an individual is jointly employed by two or more entities. Butler, 312 F.3d at 414. The three most important factors are: (1) authority to hire and fire the individual, (2) day-to-day supervision of the individual, (3) whether the employer furnishes the equipment used and the place of work. Id. at 414-15. However, none of the factors is dispositive and the common law element of control remains the "principal guidepost" in the analysis. Id. at 414.

In this case, as previously explained, Virginia law does not give the County any control over the local social services functions, except for appointing members of the Board. The County does not hire, train, or supervise local social services directors or employees. Virginia law provides that only the Commissioner and the State Board have that authority. Moreover, the State Board promulgates regulations regarding employee requirements and performance standards, which the Commissioner then enforces. Ross has not alleged any facts to plausibly show that, in spite of this statutory language, the County exercised significant control over herself or Powell, or that it governed the essential terms and conditions of their employments. Therefore, the court finds that the County may not be considered a joint employer of Ross or Powell.

For these reasons, the court finds that the County is not an employer of either Ross or Powell and, thus, Ross has failed to state a claim upon which relief can be granted under both Title VII and the ADEA. Accordingly, the motion to dismiss will be granted with respect to these claims.

II.  **Claim Under Section 1981**

With respect to Ross' claim under 42 U.S.C. § 1981, the County argues that Ross has

8

failed to state a claim upon which relief can be granted because § 1981 does not create a right of action against a local government. The United States Supreme Court in Jett v. Dallas Independent School District held that when a suit is brought against a state actor, § 1983 is the "exclusive federal remedy for violation of the rights guaranteed in § 1981." 491 U.S. 701, 733 (1989). After § 1981 was amended by the Civil Rights Act of 1991, the Fourth Circuit held that § 1983 is still the "exclusive federal remedy for violation of the rights guaranteed in § 1981" even after the amendment. Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (quoting Jett, 492 U.S. at 733). However, contrary to the County's argument, the inquiry does not end here simply because the plaintiff did not explicitly assert a claim under § 1983. Instead, "the § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities." Id. (citing Jett, 491 U.S. at 735-36); see also Lewis v. Robeson Cty., 63 F. App'x 134, 138 (4th Cir. 2003) (holding that plaintiff's § 1981 claim fails because she could not show an official policy or custom of discrimination under § 1983); Farmer v. Ramsay, 43 F. App'x 547, 553 n.8 (4th Cir. 2002) (affirming the district court's grant of summary judgment on plaintiff's § 1983 claim and, accordingly, holding that plaintiff had no independent § 1981 claim). A municipality may be sued under § 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't Soc. Servs. of the City of N.Y., 436 U.S. 658, 690 (1978).

In this case, Ross' complaint does not allege that any County employee discriminated against her pursuant to an official policy or custom of the County. Again, for the reasons stated above, Powell is not an employee of the County. However, even if the court could find that

9

Powell was an employee of the County, the complaint does not contain sufficient facts to show that she discriminated against Ross pursuant to any official policy or custom that can be attributed to the County. The complaint merely alleges that Powell, since she began working at the Department, either fired older workers or those workers quit. This allegation is insufficient to make out a plausible claim that the County had an official policy or custom of discrimination to satisfy § 1983. Because § 1983 is the exclusive remedy for a § 1981 violation, Ross' claim against the County under § 1981 also fails. Accordingly, the motion to dismiss will be granted with respect to that claim.

## Conclusion

For the foregoing reasons, the court will grant the County's motion to dismiss. The case shall proceed as to the remaining defendants. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 19th day of November, 2015.

                                                Chief United States District Judge

10

Case 7:14-cv-00512-GEC   Document 55   Filed 11/19/15   Page 10 of 10   Pageid#: 285